UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:17-cv-160

**ALLEN WILEY**                                                       **PLAINTIFF**

**v.**

**KDOC,** *et al*.                                                     **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Willard O'Bryan's Motion for Summary Judgment. [DN 82]. Wiley responded. [DN 83]. O'Bryan replied. [DN 86]. For the reasons stated below the motion is GRANTED.

**I. Background**

This is a prisoner civil rights case that arose out of events at the Kentucky State Penitentiary (KSP). Plaintiff Allen Wiley filed the instant 42 U.S.C. § 1983 action proceeding *pro se* and *in forma pauperis* and naming as defendants the Kentucky Department of Corrections (KDOC) and numerous KSP employees in their individual and official capacities. Upon initial screening of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), the Court allowed Plaintiff's excessive force claims to proceed against Defendants Randy White, Terry Griffin, Stephen Mitchell, James Knight, Chase Byrum, and Brendan Inglish in their individual capacities. The Court denied Defendants' subsequent motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [DN 34]. Defendants also moved for summary judgment, and the Court granted that motion. [DN 41; 42]. The Sixth Circuit reversed this Court's grant of summary

1

judgment and remanded. [DN 53]. Remaining is Wiley's Eighth Amendment excessive force claim. In its opinion, the Sixth Circuit noted that "it appears that the appointment of pro bono counsel would be appropriate to guide Wiley through discovery, as well as the complicated issues presented in this case." *Id.* at 7. Accordingly, the Court conditionally appointed David Riley as pro bono counsel for Wiley. [DN 55]. Riley then entered an appearance on behalf of Wiley. [DN 56]. Thereafter, Wiley filed an Amended Complaint adding and asserting individual and supervisor liability claims against a new defendant—Willard O'Bryan—for violation of Wiley's Eighth Amendment rights and adding a claim of supervisor liability against existing Defendant Brendan Inglish. [DN 67]. Before the Court now is O'Bryan's Motion for Summary Judgment. [DN 82].

## II. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine

dispute." Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996) (citing *Liberty Lobby*, 477 U.S. at 247-49).

### III. Discussion

First, O'Bryan argues that Wiley failed to exhaust administrative remedies. [DN 82-1 at 2]. Specifically, O'Bryan claims that Wiley failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (PLRA) because Wiley did not name O'Bryan in his grievance in accordance with KSP's Corrections Policy and Procedure (CPP). *Id.* at 2-4. O'Bryan also argues that he is entitled to qualified immunity "as to the taser claim." *Id.* at 4. The Court takes these arguments in turn.

#### a. Failure to Exhaust

O'Bryan argues that the CPP required Wiley to include all aspects of the issue and identify all individuals involved in the incident in his grievance, and O'Bryan was not identified in the grievance. *Id.* at 3. Therefore, O'Bryan claims that Wiley failed to exhaust his administrative remedies as required by the PLRA.

##### i. Exhaustion Standards

The PLRA bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). To exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the

deadlines and other applicable procedural rules established by state law. *Jones*, 549 U.S. at 218-19. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). However, "failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel Cty. Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones*, 549 U.S. at 204). "Where, as here, a party moves for summary judgment, the moving party must affirmatively show there is no 'genuine dispute of material facts as to the plaintiff's exhaustion on administrative remedies.'" *Marcum v. Gaddis*, No. 1:19-CV-00069-GNS-HBB, 2021 WL 1930709, at *2 (W.D. Ky. May 13, 2021) (citing *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012)) (cleaned up).

Kentucky Corrections CPP 14.6 describes the process required for a KSP inmate to properly file a grievance. [DN 82-3]. In relevant part, CPP 14.6 provides:

> The grievant shall include all aspects of the issue and identify all individuals in the "Brief Statement of the Problem" section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1.

*Id.* at 8 (CPP 14.6, II(J)(1)(a)(5)). Thus, to properly exhaust administrative remedies, Wiley was required to name all individuals involved in the incident in his grievance. *See Luther v. White*, No. 5:17-CV-138-TBR, 2019 WL 511795, at *7 (W.D. Ky. Feb. 8, 2019). As the Sixth Circuit has stated, "a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011). "The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected, and to create an administrative record for those disputes that eventually end up in court." *McDonald v. Green River Corr. Complex*, No. 4:17-CV-P138-

JHM, 2020 WL 5237520, at *2 (W.D. Ky. Sep. 2, 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-96 (2006)). "Requiring inmates to exhaust prison remedies in the manner the State provides - by, say, identifying all relevant defendants . . . prevents inmates from undermining these goals by intentionally defaulting their claims . . . prompting unnecessary and wasteful federal litigation in the process." *Id.* (quoting *Reed-Bey*, 603 F.3d at 324-25).

### ii. Application

Wiley claims that he did not fail to exhaust his administrative remedies. [DN 83 at 9]. First, Wiley argues that his grievance states that on July 10, 2017, he was assaulted by "C/O Griffin" and "several unknown officers," thereby attempting to put all involved officers, including O'Bryan, on notice of the grievance. *Id.* Wiley argues that on appeal, the Sixth Circuit relied on the grievance now at issue in reversing the Court's grant of summary judgment, which was based on failure to exhaust, even though some of the defendants are not named in that grievance. *Id.* Wiley states: "If the grievance was good enough for the Sixth Circuit to revive the case against the 'unknown officers' that were eventually named as Defendants when Plaintiff filed his *pro se* Complaint, that same grievance is clearly good enough to assert claims against Mr. O'Bryan, who was also indisputably involved in this incident." *Id.*

Second, Wiley argues that grievance procedures at KSP did not require Wiley to name all of the officers who were involved in the incident in the grievance. *Id.* at 10-11. This is so, Wiley argues, because KSP's Inmate Grievance Form does not include a direction to prisoners to identify all people involved and there is no place on the form that would prompt a grievant to list the names of the people involved, "such as an explicit blank asking inmates to list the names of the people involved." *Id.* at 11. Wiley relies on *Browder v. Ankrom*, No. 4:05CV-P9-M, 2008 WL 3850380,

5

at *1 (W.D. Ky. Aug. 14, 2008) (McKinley, J.), for the proposition that naming staff members involved in an incident is not required when the grievance form does not suggest that naming staff members is required, or when "the grievance procedure as explained to Plaintiff did not require that he name individual staff members." *Id.* at 11 (quoting *Browder*, 2008 WL 3850380 at *4). Wiley also claims that *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010)—a case on which O'Bryan relies—is distinguishable and inapplicable here because unlike the plaintiff in *Reed-Bey*, who could have exhausted the grievance process if he wanted to, Wiley could not have exhausted the grievance process because the process was effectively unavailable to him. *Id.* at 11-12. Wiley argues that because he had no available procedure to exhaust, he cannot have failed to exhaust. *Id.*

Finally, Wiley underscores the Sixth Circuit's language in the appeal of this Court's grant of summary judgment. *Id.* at 12-13. Wiley points to the Sixth Circuit's criticism of grievance policies and procedures that are confusing or contradictory:

> [T]he apparent interplay of the grievance form and the policy itself is misleading. A grievance scheme is unavailable when it contains "machination[s]" and "misrepresentation[s]," when "officials [have] devise[d] procedural systems . . . in order to 'trip[ ] up all but the most skillful prisoners.'" . . . The grievance form expressly asks inmates to request an action be taken but gives the inmates no directions or restrictions as to the action they may request. Unless inmates are apprised of the policy prohibiting the suggestion of a specific disciplinary action, the grievance form invites disqualifying inmate error. The contradictory, "gotcha" nature of the grievance form and the policy demonstrates a factual dispute as to the availability of the grievance process. Therefore, we cannot say that the defendants have supplied "evidence . . . so powerful that no reasonable jury would be free to disbelieve" that the grievance process was available to Wiley.

[DN 53 at 6 (citations omitted)]. Although in this excerpt, the Sixth Circuit was addressing the policy against inmates requesting specific disciplinary action in their grievances, Wiley contends that the same principles apply to the policy of requiring inmates to name all involved parties when there is no overt direction on the form indicating that the complaining inmate should list all involved parties' names. [DN 83 at 13]. In other words, Wiley again contends that the grievance

6

form's failure to explicitly state that all named parties should be identified in the grievance makes the proper grievance process so confusing or misleading that it is effectively unavailable.

Wiley's contentions can be framed as two main arguments: (1) Wiley did not fail to name O'Bryan in his grievance because he wrote that the grievance was being filed against "several unknown officers," and, alternatively, (2) the confusing nature of the grievance form—in its failure to overtly state on its face that all involved parties should be listed—effectively rendered the grievance process unavailable to Wiley, and without an available grievance process, Wiley could not have failed to exhaust administrative remedies. O'Bryan replied, arguing that Wiley *did* have to list all individuals in the grievance to properly exhaust pursuant to CPP 14.6. [DN 86].

Wiley's claim that it was sufficient to list "several unknown officers" must fail. Wiley argues that it was enough to list "several unknown officers" in place of specific names, but CPP 14.6 II(J)(1)(a)(5) does not permit such leniency. The policy is clear—the grievant must "identify all individuals." [DN 82-3 at 8, (CPP 14.6 II(J)(1)(a)(5))]. "[A] plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall*, 443 F. App'x at 106. The Court finds no reason that this general rule should not apply to Wiley.

Wiley also argues that the Sixth Circuit relied on the grievance now at issue in reversing this Court's grant of summary judgment for failure to exhaust, even though some of the defendants are not named in the grievance. [DN 83 at 9]. Wiley states: "If the grievance was good enough for the Sixth Circuit to revive the case against the 'unknown officers' that were eventually named as Defendants when Plaintiff filed his *pro se* Complaint, that same grievance is clearly good enough to assert claims against Mr. O'Bryan, who was also indisputably involved in this incident." *Id.* It is true that on appeal, the Sixth Circuit reversed this Court's grant of summary judgment,

7

remanded, and revived the case against "unknown officers" who were not specifically named in Wiley's grievance. [DN 53]. However, the Sixth Circuit did not consider the defendants' argument that Wiley failed to exhaust when he failed to identify any defendant other that "C/O Griffin" in his grievance. [DN 22 at 7]. Prior to the Sixth Circuit's reversal, this Court granted summary judgment on the ground that Wiley failed to exhaust administrative remedies because he improperly requested specific action in his grievance by asking for the officers involved in the incident to be held accountable and removed from their positions. [DN 41 at 5]. This was also one of the reasons that the prison's grievance coordinator rejected Wiley's grievance. [See DN 22-1 at 5 (Grievance Rejection Notice)]. When the defendants moved for summary judgment, they included as grounds that Wiley failed to exhaust administrative remedies because he failed to name any defendant except "C/O Griffin" in his grievance. [DN 22 at 6-8]. However, this issue was not explicitly considered by this Court when it granted summary judgment or by the Sixth Circuit on appeal. However, Wiley's failure to identify all individuals in his grievance was an adequate basis to render summary judgment as to the defendants other than "C/O Griffin"[1] who originally moved for summary judgment. [*See* DN 22 at 1].

"[O]rdinarily a district court should not sua sponte raise and consider an affirmative defense like exhaustion." *Moore v. Westcomb*, No. 2:20-cv-179, 2021 WL 1851130, at *2 (W.D. Mich. May 10, 2021) (citing *Fitch v. Gonzales*, 425 F. App'x 440, 441 (6th Cir. 2011)). "However, exceptions exist to this usual approach." *Id.* "[T]he district court does not err when it grants the motion for summary judgment and sua sponte dismisses a different defendant who did not file a motion or even raise the defense, so long as the defense applies to that defendant." *Id.* (citing *Grand Rapids Plastics, Inc. v. Lakin*, 188 F.3d 401, 407 (6th Cir. 1999); *Doyle v. City of Columbus*,

---

[1] Wiley names "C/O Griffin" in his grievance and "Terry Griffin" in his complaint, but the defendant's actual name is apparently Terry Griffith.

8

120 F. App'x 560, 564 (6th Cir. 2004); *Thomas v. Mahoning Cty. Jail*, No. 16-3495, 2017 WL 3597428, at *2 (6th Cir. Mar. 21, 2017)). Here, O'Bryan has raised the affirmative defense of failure to exhaust as to him because Wiley did not name O'Bryan in the grievance. Because Wiley only named "C/O Griffin" in his grievance, this defense also applies to White, Mitchell, Byrum, Knight, and Inglish. Although this Court did not explicitly consider this defense when it granted summary judgment, and the Sixth Circuit did not consider this defense when it reversed this Court's grant of summary judgment, the defense applies nonetheless. Accordingly, Defendants O'Bryan, White, Mitchell, Byrum, Knight, and Inglish should be dismissed from this action due to Wiley's failure to exhaust administrative remedies by failing to identify said defendants in his grievance. Before concluding the analysis, though, the Court will consider Wiley's further arguments.

As explained above, Wiley also argues that the grievance procedures at KSP did not require him to name all of the officers who were involved in the incident in the grievance. [DN 83 at 10-11]. The Court understands Wiley to be claiming that because the grievance form does not include an explicit direction to identify all involved individuals, the proper grievance policies are so obscured that the grievance process is effectively unavailable. *Id.* Fist, Wiley relies on *Browder*, 2008 WL 3850380 at *4. In *Browder*, the plaintiff did not name the individual defendants in his grievances, and thus, the defendants argued that the plaintiff had failed to exhaust administrative remedies. *Id.* at *3-4. However, the plaintiff argued that the grievance policy information provided to him did not include any direction to name individual staff members. *Id.* The Court found that it was unclear whether the plaintiff had been correctly informed of the policy requiring inmates to name all involved individual staff members in their grievances, and because on summary judgment the facts must be construed in the light most favorable to the nonmoving party, the Court presumed

9

that the plaintiff had not been correctly or completely informed of the applicable grievance policies. *Id.* Accordingly, the Court could not conclude that there was no genuine and material factual dispute over whether that the plaintiff properly exhausted his administrative remedies. *Id.*

A key difference between *Browder* and this case is that Wiley does not claim that he was actually unaware of or misinformed of the policy requiring him to name all involved individuals in his grievance. Instead, Wiley argues that "the grievance procedure at KSP did not require Plaintiff to explicitly name Mr. O'Bryan in order to exhaust his administrative remedies against him." [DN 83 at 10-11]. Wiley says this is evident in the fact that the grievance form does not prompt inmates to identify the parties involved. However, there is no requirement that all grievance policies must be stated on the face of a grievance form. That is not what the Court held in *Browder*. The Court's point there was that if the inmate did not know about a particular grievance policy because the correctional facility provided incorrect or misleading directions to the inmate, his unawareness could not be held against him. *Browder*, 2008 WL 3850380 at *3-4. As the Sixth Circuit stated in considering the action at bar: "A failure to inform prisoners of disqualifying aspects of the grievance process may render the process so opaque as to be unavailable." [DN 53 at 5 (citing *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016))]. As to the policy requiring identification of all involved individuals though, Wiley does not argue that he was unaware or uniformed of such policy; he argues that there was no such policy. [DN 83 at 10-11 ("[T]he grievance procedure at KSP did not require Plaintiff to explicitly name Mr. O'Bryan in order to exhaust administrative remedies against him.")]. That is simply false. [*See* DN 82-3 at 8 (CPP 14.6, II(J)(1)(a)(5))].

Wiley was bound by the policy requiring that he identify all individuals in grievance. *Id.* His argument that the grievance form needed to state this policy on its face for the grievance process to be available to him fails. "[I]n some limited circumstances an inmate is relieved of his

10

duty to exhaust administrative remedies because the remedies are effectively unavailable." *Frazier v. Dollar*, No. 2:19-CV-00102-JRG-CRW, 2021 WL 1238275, at *4 (E.D. Tenn. Apr. 1, 2021) (citing *Ross*, 136 S. Ct. at 1859-60). "These circumstances include (1) when there is no possibility for relief through use of the procedure; (2) when the rules are so confusing as to render them essentially unknowable; and (3) when prison officials 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859-60). At the same time, "[a] plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy." *Napier*, 636 F.3d at 221-23, n.2 (citations omitted). Thus, ignorance of grievance policies will not excuse a failure to exhaust. However, particularly confusing policies, misrepresentation of the policies or grievance process, or failure to inform inmates of disqualifying aspects of the grievance process may excuse a failure to exhaust. Wiley's allegation that the grievance form did not include an explicit direction that an inmate should identify all individuals does not demonstrate that the grievance procedures were unknowable or unavailable, as was true for the plaintiff in *Browder*. Thus, Wiley has not shown that the generally available administrative remedies were effectively unavailable to him. *See McDowell v. Mattingly*, No. 3:20-cv-383-CHB, 2021 WL 1535367, at *3 (W.D. Ky. Apr. 19, 2021) (citing *Bennett v. Mich. Dep't of Corr.*, No. 15-14465, 2017 WL 3208591, *5 (E.D. Mich. July 24, 2017)) (explaining that in the context of summary judgment, the moving party must show that there was available administrative remedy that the plaintiff did not exhaust, and then the burden shifts to the non-moving party to show that the remedies were effectively unavailable).

      Wiley's reliance on the Sixth Circuit's criticism of contradictory grievance policies also fails. On appeal, the Sixth Circuit found that there was a factual dispute precluding summary judgment because it was unclear whether Wiley knew that he could not request specific

11

disciplinary action in his grievance. [DN 53 at 6]. However, the court there emphasized that the pertinent CPP policy prohibited requests for specific disciplinary action while at the same time the grievance form "asks inmates to request an action be taken but gives the inmates no directions or restrictions as to the action they may request." *Id.* The "contradictory, 'gotcha' nature of the grievance form and the policy" was the key problem making the grievance process so confusing or misleading that a reasonable jury may have considered it effectively unavailable. *Id.* As to the policy regarding identifying involved individuals, though, there is no contradiction. [DN 82-4 at 6]. The grievance form says nothing about identifying individuals, so there is no conflict or contradiction with CPP 14.6, II(J)(1)(a)(5)). Thus, the Court finds no genuine dispute of material fact as to plaintiff's failure to exhaust administrative remedies. Even if Wiley did not know about the policy against requesting specific relief, he failed to exhaust because he failed to identify all involved individuals. Moreover, Wiley failed to exhaust his administrative remedies as to the defendants who are not named in his grievance. Accordingly, the Court will grant summary judgment and terminate defendants O'Bryan, White, Mitchell, Byrum, Knight, and Inglish.[2]

### b. Qualified Immunity

In his Amended Complaint, Wiley argues that O'Bryan is liable for excessive force under the Eighth Amendment and 42 U.S.C. § 1983 and for supervisor liability in supplying Defendant Knight with the taser used on Wiley. [DN 67]. O'Bryan claims he is entitled to qualified immunity on the supervisor liability claim. Because the Court will grant summary judgment to O'Bryan due to Wiley's failure to exhaust administrative remedies, the Court need not address this argument.

---

[2] The Court notes that the facts alleged against the defendants in this case are disturbing. However, the Court finds that it is bound by the law to reach the conclusions discussed herein.

## IV. Conclusion

O'Bryan's Motion for Summary Judgment, [DN 82], is **GRANTED**. Defendants O'Bryan, White, Mitchell, Byrum, Knight, and Inglish are **TERMINATED**. **IT IS SO ORDERED**.

cc: counsel